J-A26017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: JACK ROBBINS, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: MICHAEL ROBBINS AND HOLLY ROBBINS | : | |
| | : | |
| | : | No. 673 EDA 2023 |

Appeal from the Order Entered February 6, 2023
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2022-X2697

| | | |
|---|---|---|
| IN RE: JACK ROBBINS, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: MICHAEL ROBBINS AND HOLLY ROBBINS | : | |
| | : | |
| | : | No. 674 EDA 2023 |

Appeal from the Order Entered February 6, 2023
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2022-X2698

| | | |
|---|---|---|
| IN RE: JACK ROBBINS, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: MICHAEL ROBBINS AND HOLLY ROBBINS | : | |
| | : | |
| | : | No. 675 EDA 2023 |

Appeal from the Order Entered February 6, 2023
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2022-X2699

BEFORE:  DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED SEPTEMBER 9, 2024**

Michael and Holly Robbins ("Appellants") appeal from the order in which the trial court found it lacked jurisdiction. We conclude the court did not err in finding it lacked jurisdiction to address Appellants' challenges to a prior settlement agreement, over which a Florida court retained jurisdiction. We affirm.

Jack Robbins died in July 2013. His will was probated in Florida, with two of his four children – Stephen Robbins and Rebecca Robbins – acting as personal representatives and with Stephen, Rebecca, and Wallace Lindsay (collectively, together with Deborah Robbins, "Appellees") acting as co-trustees of a pour-over trust.

Litigation ensued over the estate and various trusts, and the parties resolved it by settlement. The Settlement Agreement was between Michael and Holly Robbins, individually and as parents of their minor children, and the defendants in the Florida action – Lindsay, Rebecca, and Stephen, "each individually and in their capacities as Co-Trustees of the Jack Robbins Trust" and all subtrusts, Stephen and Rebecca as Co-Personal Representatives of Jack Robbins' Estate, and Deborah, individually and as Successor Trustee of the Grandchildren's Trust.[1] Hrg. Ex. 1, Settlement Agreement at 1.

The Settlement Agreement stated that Appellees provided Michael with draft accountings of the Estate, the Revocable Trust, and the Jack Robbins

_____

[1] Paige, Blake, and Erica Robbins also are signatories with Michael and Holly. They are Michael and Holly's adult children.

- 2 -

Family LP and represented the documents were true and correct. *Id.* at 2.
Michael accepted as true and correct the draft accountings, "waive[d] any
further accounting, and consent[ed] to the closure of the Estate, termination
of the Trust, and to the discharge" of the co-trustees and personal
representatives. *Id.* at 3. Michael was to transfer to the revocable trust his
interest in the Jack Robbins Family LP. *Id.* He would receive a total sum of
$1,079,108.28 in "full and final satisfaction of his interest in the Estate, the
Revocable Trust, and in the Jack Robbins Family LP." *Id.*[2] The Settlement
Agreement further stated that the parties agreed that the "purposes of the
Grandchildren's Trust have been fulfilled" and that the trust and the subtrusts
would be terminated. *Id.* The Settlement Agreement also included a general
release of Appellees by Michael and Holly and their children.[3]

---

[2] The Settlement Agreement further stated Michael admitted he was indebted
to the estate in the amount of $944,000. Settlement Agreement at 2.

[3] The release provided:

> In consideration of the promises and other consideration set
> forth in this Agreement, Michael and Holly for themselves,
> individually, and as parents and natural guardians of Austin
> and Chase, and Blake, Erica, and Paige, in any and all
> capacities, on their own behalf and on behalf of their
> successors, assigns, heirs, agents, employees, attorneys,
> executors, representatives, and others claiming through or
> under them, do hereby release, acquit, and forever
> discharge all other Parties and all Additional Releasees, in
> any and all capacities, and its officers, directors, employees
> and agents, and all and agents, and all other Parties, in all
> capacities and their successors, assigns, heirs, agents,
> employees, attorneys, executors, representatives, and

*(Footnote Continued Next Page)*

The Settlement Agreement provided that the Florida court presiding over the estate and trust cases "shall retain jurisdiction to enforce the terms of this Agreement until such time as it has been fully performed." *Id.* at 5. The parties further agreed that the Agreement would "be construed in accordance with the laws of the State of Florida, without regard to its conflict of law provisions." *Id.* at 6. The court issued an order approving the Settlement Agreement and stating, "This Court retains jurisdiction to enforce the terms of the Settlement Agreement and this Order." Hrg. Ex. 2, Order, dated Nov. 10, 2016, at 2. The final judgment incorporated the Settlement Agreement and stated the court "reserves jurisdiction solely to enforce the terms of the Settlement Agreement and this Final Judgment." Hrg. Ex. 4, Final Judgment, dated Dec. 15, 2016, at ¶ 9.

---

others claiming through or under them, and their respective counsel, of and from any and all claims, rights, sums of money, contracts, agreements, promises, covenants, causes of action, including but not limited to negligence, tort, contract, breach of duty, and all other causes of action, suits, damages, debts, obligations, losses, expenses and liabilities of any kind or nature whatsoever, whether known or unknown, asserted or unasserted, that they have, have had, or may hereafter have, or which their personal representatives, administrators, executors, heirs, assigns, or other successor parties hereafter may have, by reason of any and all matters, causes, acts, omissions, or things whatsoever, from the beginning of time until the date of this Agreement provided, however, that the foregoing release shall not be deemed to apply to any of the obligations of the Parties set forth in this Agreement.

Settlement Agreement at 5.

Michael subsequently brought an action in Florida alleging the Settlement Agreement had been fraudulently induced. In October 2019, the court dismissed the complaint with prejudice, finding it was filed after the statute of limitations had expired and that the final judgments were entitled to *res judicata*. The court stated it "reserve[d] jurisdiction to determine the entitlement and amount of attorneys' fees and costs to be awarded to [Appellees]." Hrg. Ex. 6, Final Judgment of Dismissal With Prejudice, dated Oct. 17, 2019, at ¶ 3.

In July 2022, Michael filed three Complaints in Pennsylvania, one for the estate, one for the trust, and one for the grandchildren's trusts. These Complaints gave rise to this appeal.

In the Complaints, Appellants stated the action was "to address wrongful and inequitable acts by Defendants, Personal Representatives[] and Trustees of the Estate of Jack Robbins and certain Trusts of Jack Robbins, which arises from Defendants' management, administration, and distribution of the Estate and Trusts and other Jack Robbins' entities." Complaint in Civil Action filed, July 8, 2022, at 1.[4] Appellants stated Appellees made misrepresentations, which "resulted in [Appellees] obtaining a settlement from [Appellants'] of their interests for less than the fair value of [Appellants'] interests therein."

_____

[4] The Complaint was filed at each docket, to comply with the order that Appellants file "separate petitions for each trust and any decedent's estate, under the name of the decedent or trust settlor." Petitions filed Pursuant to the Order of the Orphans' Court Dated June 24, 2022, at Docket Nos. 2022-X2697, 2022-X2698, 2022-X2699.

*Id.* at 2. Appellants maintained that the accounting provided during the settlement negotiations was "grossly false, inaccurate, and misleading." *Id.* at 7. They claimed the accounting misrepresented the ownership of a property. *Id.* at 8. Appellants further asserted that Appellees claimed the inclusion in the Settlement Agreement of Appellants' children as beneficiaries of a trust was a typographical error. *Id.* at 17. Appellants also claimed Appellees made misrepresentations regarding the Jack Robbins Family LP. The Complaint raised claims of a violation of fiduciary duties, breach of fiduciary duty and business interest oppression, fraud and misrepresentation, constructive fraud, conversion, civil conspiracy, punitive damages, and constructive trust.[5]

_____

[5] As relief for each claim, Appellants sought:

> WHEREFORE, Plaintiffs pray that the value of 82 Tall Oak Circle, 98 Tall Oak Circle and 812 Tall Oak Circle be restored to the value of the Estate directly or through an increase in the value of Die Cast, Inc., that Plaintiffs be awarded a 1/4 (25%) of that value, that Plaintiffs be awarded at least $110,000 for the value of their then minor children, Austin and Chase's, interest in Barclays Account 832-26423, that they be awarded a 1/4 (25%) interest of the missing $8,162,858 in principal from the FLP, that they be awarded a 1/4 (25%) interest in the IRA monies $1,386,472.75 or, in the alternative, that the Court direct Defendants to pay Plaintiff Michael Robbins share of the IRA into the Conduit Trust, in an amount to be determined, one quarter of profit distributions of the FLP for fiscal years 2017-2021 and beyond, in excess of $3,000,000, interest, attorney's fees, costs, punitive damages, that the Trustees/Executors be surcharged, at a minimum, of disgorgement of their

*(Footnote Continued Next Page)*

The trial court held a hearing on whether it had jurisdiction over the claims raised in the Complaints. After the hearing, the court issued an order finding it lacked jurisdiction and dismissing the Complaints with prejudice. Appellants filed a notice of appeal.

The court issued an order requiring Appellants to file a Rule 1925(b) statement and serve the statement on the trial judge:

> Appellant shall file of record, and serve upon the undersigned Judge, either by mail to: The Honorable Melissa S. Sterling, Montgomery County Court House, P.O. Box 311, Norristown, PA, 19404-0311, or in person to the mail room at the Montgomery County Court House, a concise statement of errors complained of on appeal.

Order, Mar. 9, 2023. Appellants filed the statement, but the trial judge did not receive a served copy.

Appellants raise the following issues:

> 1. Did the Orphans' Court err when it held that it did not have jurisdiction because it believed jurisdiction was retained by the Palm Beach County, Florida Court?
>
> 2. Where decedent's Florida estate and trusts have been completely administered and distributed, and no property of either is before any Florida Court, and the Florida Court has declined jurisdiction, does a Pennsylvania Orphans'

_____

> fiduciary commissions and that the Court award such other relief as it deems just and appropriate.

**See, e.g.,** Complaint at 57. Further, Appellants sought an order requiring Appellees to file accountings. **See, e.g.,** Petition #A1a Filed Pursuant to the Order of the Orphans' Court Dated June 24, 2022 and For an Order or Decree to Compel Defendants' to File the Original Instruments or Conformed Copies of Them and To File an Account in Accordance with 20 Pa. Cons. Stat. Ann Section 3501.1.

Court have jurisdiction over claims of constructive trust and the like of a residuary beneficiary who was not a fiduciary of the estate or trusts against wrongfully enriched residual beneficiaries who were also fiduciaries of the estate and trust (two of whom reside in Montgomery County and a third in Chester County) and all of whom have their inheritance and that of the claimant in Pennsylvania and who, as a consequence of their undervaluing the estate and trust to the non-fiduciary beneficiary by, inter alia, over $8 million dollars, wrongfully acquired a portion of the nonfiduciary residual beneficiary's inheritance for their own gain?

3. Whether this Court should dismiss Michael's appeal because counsel allegedly did not serve Judge Sterling Appellants' 1925(b) Statement?

4. Whether this Court should dismiss Michael's appeal because the Orphans' Court stated it cannot determine from the 1925(b) Statement what Appellants' "claims" are and cannot "conclude whether the Florida courts have already ruled on these [']claims[']?"

5. Whether the appeals should be dismissed because of something in Michael's 1925(b) Statement from which the Orphans' Court wrongly believes Pennsylvania's two-year statute of limitations for fraud commenced on the date of the Settlement Agreement?

6. Whether there is any validity to the Orphans' Court's claim that the "heart of the matter" is whether "there is no forum that should be saddled with these never-ending lawsuits brought by Appellants, after a full and complete release of all matters [to October 25, 2016], including those involving the Estate, the Trust, the FLP, the Grandchildren's Trust, executed by them in 2016 when they entered into the Settlement Agreement, which was then approved by the Florida trial court and reduced to final judgment by the Florida court?"

Michael's Br. at 5-7 (answers of trial court and footnote omitted).

In March 2024, we remanded for the trial court to determine whether Appellants had served the trial judge with a copy of the Rule 1925(b) statement. The trial court held a hearing and credited the testimony of

Appellants' counsel that he had mailed the statement to chambers. The court found that Appellants had substantially complied with the Rule 1925 Order, and it would unfairly prejudice Appellants if the court held all issues waived on appeal "where counsel reasonably believed that he had followed that order." Pa.R.A.P. 1925(a) Supplemental Op. at 7. We will therefore address Appellants' claims on appeal.

We will first address whether the trial court had jurisdiction over the claims raised in Appellants' Complaints, as it is dispositive. Appellants claim the trial court "incorrectly pre-supposed that trust fiduciaries deal at arms-length with their beneficiaries," but the law imposes strict duties of loyalty and care on fiduciaries. Appellants' Br. at 19. Appellants claim Appellees concealed and neglected to account for certain trust assets. They claim that the Settlement Agreement referenced trust money for Michael and Holly's minor children, but Appellees now claim that was a typographical error. Appellants further note that the decedent had an IRA that was held in a conduit trust and the trustees of the trust terminated it and elected a lump sum payment to pay trust expenses, which allegedly cost the trust millions of dollars in unnecessary federal taxes. Appellants further claim that the draft accounting provided prior to the settlement did not include $8,162,858, which they claim is "after-found Trust property." *Id.* at 22. Appellants further claim other actions by Appellees breached their fiduciary duties.

Appellants claim the Settlement Agreement and release do not bar the claims because contracts between trust beneficiaries and fiduciaries that

- 9 -

enrich the fiduciaries with unreasonable advantages are voidable. They maintain the release was not enforceable because it was not clear and unequivocal. They claim Appellees failed to disclose material facts to Michael and his "consent" does not permit the release to allow Appellees to "maintain[] their ill-gotten gains." *Id.* at 55. Appellants further contend that a trust beneficiary has both *in personam* rights against a trustee and an *in rem* equitable interest in the trust. He claims the release did not release his equitable interest in the trust property.

Appellants further claim the Florida court had jurisdiction only until one year after the settlement was signed. They argue the Florida courts did not retain jurisdiction, claiming the Pennsylvania court had jurisdiction because the Florida litigation was terminated and the property had been distributed to a fiduciary who resides in Pennsylvania.

Here, the estate, trusts, and accountings were addressed by the Settlement Agreement. "The enforceability of settlement agreements is determined according to principles of contract law." ***Ragnar Benson, Inc. v. Hempfield Township Mun. Auth.***, 916 A.2d 1183, 1188 (Pa.Super. 2007) (citation omitted). "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." *Id.* (citation omitted). Our standard of review for questions of law is *de novo*, and the scope of our review is plenary. *Id.*

The Settlement Agreement and Order approving it both stated that the Florida court retained jurisdiction over the Settlement Agreement. The parties

- 10 -

to the Settlement Agreement are bound by its provisions, including the jurisdictional provision. *See Mazzella v. Koken*, 739 A.2d 531, 537 (Pa. 1999) (stating where parties agreed to material terms of bargain, the settlement agreement will be enforced).

Appellants assert their claims are not covered by the Settlement Agreement. However, the text of their Complaints and other filings belie that claim. The Complaints begin by stating they were filed "to address wrongful and inequitable acts by Defendants, Personal Representatives[] and Trustees of the Estate of Jack Robbins and certain Trusts of Jack Robbins, which arises from Defendants' management, administration, and distribution of the Estate and Trusts and other Jack Robbins' entities." Complaint in Civil Action, filed July 8, 2022, at 1. In their filings, Appellants seek an Accounting of the Estate and Trust, which was addressed in the Settlement Agreement. They further allege that various property should have been included in the Estate or Trust, which, again, goes to the Settlement Agreement. Further, Appellants allege that they were misled during the settlement negotiations, which would be for the court enforcing the Agreement to determine.

We do not agree with Appellants that the claims here are *in rem*, rather than *in personam*, or that the settlement addressed only *in personam* claims. In addition, the cases Appellants cite to support jurisdiction are inapposite. They do not involve claims where an estate or trust was resolved by a settlement agreement containing a forum clause. Moreover, all but one are not binding on this Court. *See Princess Lida of Thurn and Taxis v.*

*Thompson*, 305 U.S. 456, 466 (1939) (concluding the Pennsylvania court's exercise of *quasi in rem* jurisdiction rendered the federal court without jurisdiction such that plaintiffs in the federal suit were properly enjoined from proceeding); *Thatcher Estate*, 47 Pa. D.&C.2d 712, 713-14, 723 (O.C. Allegheny Co. 1969) (addressing whether court had jurisdiction over the administration of a trust and finding it was the testator's intent that the trust be administered in Pennsylvania where the testator resided in New Mexico and his will was probated there but he named Pennsylvania residents as trustees and a major portion of the corpus of the trust was located in Pennsylvania); *Rice Estate*, 8 Pa. D.& C.2d 379, 383 (O.C. Montgomery Co. 1956) (finding Pennsylvania court had jurisdiction over administration of trust where two of the three trustees lived in Pennsylvania, including the trustee who has the most active role in the management of the trust and the court of Rhode Island did not, in its adjudication of the executors' account, indicate that the trustees were to be answerable there in the future); *McCloskey Estate*, 6 Pa D.&C.2d 97, 106-08 (O.C. Allegheny Co. 1956) (affirming the admission of a will to probate and finding that orphans' court had power to determine whether a trust was created due to fraudulent activities related to the will) ; *Wirth v. Hagen*, 82 Pa. D.& C. 302, 307 (C.P. Lackawanna Co. 1952) (finding Pennsylvania court had jurisdiction to address fraud claims where the administration of the estate occurred in Virgina and the estate had been "distributed and completed wound up by" by the Virgina court before the fraud action commenced).

Further, that the Florida court found the claims filed in Florida barred by the statute of limitations does not mean that Florida no longer has exclusive jurisdiction to address claims challenging the Settlement Agreement. Rather, it means that Appellants did not bring its case in the time required under the law that they agreed governed the Agreement.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/9/2024